oral argument, 15 minutes per side. Mr. Grostick will be the appellant. Good morning, your honors. Christian Grostick on behalf of Terrance Craig. I'd like to reserve three minutes for rebuttal. All right. And may it please the court, the district court here made two errors that prejudiced Mr. Craig, one at trial and one at sentencing. First on the trial issue, the court admitted an unauthenticated video of a masked man wrapping and holding a gun. The government makes several arguments about why that was an error. Two I believe I can address quickly together. The government argues that they could play the video without authenticating it because they didn't admit it as an exhibit and also because it was only used in impeachment. Both of those are wrong under the law and under the facts. Under the law, evidence rule 103D says the court has to conduct a trial in order to avoid inadmissible evidence even being suggested to the jury. And authentication is a prerequisite for any evidence including impeachment evidence. So there is some impeachment evidence that can be offered without, in the sense that you could question a witness to impeach. Yes. As to matters that have not been brought into evidence thus far. Yes. So for example, the government could have asked Mr. Craig, were you ever in a video where you held a gun? And if he said no, they were stuck with that answer then. Unless there was an authenticated piece of evidence that was admissible that the government offered. You can cross examine a person with an exhibit that hasn't been admitted. You can do that under appropriate circumstances. Yes, that's right. But that cross examination doesn't then allow the exhibit to be admitted or the evidence to be played for the jury. Well, for instance, if you had a document, you could put it on the ELMO so with regard to a document that's not in evidence. Wouldn't you agree that you could do that? Not if it's not authenticated. Not if it's inadmissible evidence. No, you don't have to have admissible evidence to use an exhibit to examine a witness. Everything you use in an examination doesn't have to be an admissible piece of evidence. It should be more probative than prejudicial and shouldn't be inappropriate. It doesn't have to be admitted to be used in an examination in every circumstance. If it's going to be shown to the jury, it needs to be admissible evidence. And that's true under Rule 103-D. The Isawail and Hall cases that I cited out of the 5th Circuit and the 4th Circuit explicitly say there's no exception for admissibility for impeachment evidence. Well, the better practice here would have been to have permitted the examination outside the presence of the jury and maybe then subsequently in front of the jury if there were no problems. Yes, exactly. And I would, I said also on the facts, right? The government didn't limit its use of this video to impeachment. It said in closing, you saw the video, you know he was holding the gun before then at a previous time because you saw the video. That's not saying he's not credible because you saw the video. That's using it as substantive evidence. Although the judge did tell the jury that it had not been admitted when they asked to see it again and he said really that hadn't been admitted in the case. Not exactly. When the jury asked to see it again, the court said you need to rely on your memory on that. It didn't say you can't consider it, it hasn't been admitted. It didn't say you can only consider it for impeachment purposes. It said you have to rely on what you remember. You can't see it again. So. Did the court say that that was because it had not been admitted? No. And again, even if it hasn't been admitted, if the court says you're allowed to rely on that, just rely on your memory, what it's saying is you can consider that evidence as substantive evidence and that's exactly what the government urged the jury to do. And I do want to emphasize it was not an authenticated video. No one was shown the video and said yes that's the video I'm talking about. No one said that's Mr. Craig and this is how I know it's Mr. Craig. The government comes back around and says well this earlier testimony, when the video wasn't shown and when the defense didn't have it yet, somehow authenticates it later on. But a few points on that. First of all, authentication isn't an ex parte proceeding where one side gets to bring out what they want about the document and the other side can't even see it to test the credibility or the accuracy of that testimony. And this case is a good example. There's three things the government points to that they say authenticated this video. One is this jacket that he's wearing, where they elicited testimony over and over and over again, four times, including on redirect, to emphasize this was the same jacket, that's how we know it's him. It's not the same jacket. Now there's no way to know that at the time when they're examining the police witnesses because the video's not there. But you can see, we submitted the video, Exhibit 72, you can compare to the jacket, he was arrested in 29. There's a zipper down the middle in the video, there's two zippers on the side, there's a couple other flaws, but the zippers themselves, it's just not the same jacket. And so we have to step back and wonder, was that the basis for the police saying that it's Craig? We just don't know. They never said why they say this is a video of Craig. If it is, it should have stayed out. There's no evidence then that it's Craig. The government points to two other things. One, that there were lyrics in the rap song. The lyrics, I think the phrase is, catch some bodies. I did a quick Google search for catch some bodies, that phrase in the lyrics. There's four that pop up in the first page. So this could be someone quoting those lyrics from another song, it could be someone using those lyrics themselves. That doesn't establish that it's Craig, certainly, or even the same video that they're talking about. And then they point to a conversation that one of the officers says he had with Craig when he was taken to the station to arrest him. But the very particular words of that conversation are very important if this is going to be an identification that it's Craig. And it's at page ID 254. The officer does not say, I said that video was you and Craig said yes, that's me. He talks about seeing the video and then asking him about an extended magazine. And Craig says, those are for show, they jam. That could be a video Craig's also seen that could be a video he posted on social media that was a cousin or a friend, and in particular a friend, it could be the driver of this car who he testified later gave him the gun. But there's, I'm stuck here speculating, but the problem is we're all speculating because nobody was shown the video and said yes, that's him and that's the video I'm talking about and this is how I know it's him. And that's why it wasn't authenticated. Now this error was not harmless and I first want to address the legal standard for that. The government says you have to find that it's more likely than not the jury would have reached a different verdict. That's not the test. The Supreme Court in Kodiakos v. United States explains the test. I know this court en banc in United States v. Christian last year applied that Justice Scalia explained is not as high a standard as more likely than not. But more importantly, Kodiakos says the court's job is not to speculate upon probable reconviction and decide according to how that speculation comes out. The question is whether it had a substantial influence on this verdict, in this case. Not whether, you know, if we imagine there was a case without this evidence, would it have come out the same way? And we know it had a substantial impact in this case in a couple ways. One, we know the jury focused on the video. It was the one piece of evidence they asked to re-see. Two, and this is thinking about how the jury is going to consider this whole case, right? The question came down to do we believe Mr. Craig's testimony? Mr. Craig says, I was in a car, we were minding our own business, going to the gas station. Another car did a U-turn and started shooting at us. The driver handed me a gun and a holster, said, here, I threw on the holster, I fired back at the car. That's his testimony. Now the jury has to decide, should we believe that? There's some corroboration for that. There are bullet holes in the back of the SUV that he was in. There's a security video from a home where you see that SUV speed by and another vehicle speed by after it. There's some support for this. The jury could believe this. But if the jury sees a video that they're told is Craig, even though that's a masked man, sometime earlier holding a gun, well now they don't have to consider whether he was justified then because they can just conclude, well, I guess he possessed a gun at another time and one of the elements is you can only possess it for as long as necessary. The government says that the jury couldn't have believed that video, his testimony, I'm sorry. It's about that too. One must judge others' reactions not by his own but with allowance for how others might react. Well what about the fact that he said to the jury that that wasn't him in the video and his testimony was not disputed in that regard? It wasn't disputed at that moment but in closing... I mean it wasn't disputed by any other evidence. I mean obviously the prosecutor may have said something untoward but there was no other evidence disputing his testimony. Well the prosecutor in closing tied it to the police officer's testimony. He said you saw that video and... But if the police officer's testimony didn't dispute, didn't identify him in the video? Well the police officer said I saw a video of Craig, he was wearing the same jacket. They didn't say he was masked which is incredible at the time. I mean the defense didn't know that but they said he was wearing the same jacket, they said he was holding the same gun and then in closing the government came... Yes, Mr. Craig said that's not me. They moved on but in closing the government said you know he had that gun before because you saw the Facebook video and you saw him with the gun. That's at page ID 488. The government obviously believed that the jury could believe that or they wouldn't have said it. And some on this issue, unless there's further questions, this was an unauthentic piece of evidence. It had to be authenticated to come in. It was harmful and the court should order a new trial on those grounds. On sentencing, which of course the government doesn't need to address or the court doesn't need to address if it does order a new trial, there's three items in dispute. The first is whether the error is preserved. It was preserved. There was no new objection at the close of the sentencing hearing in response to the BASTA question. But it's because the objection had already been raised. The defense said we object to this enhancement. The government argued self-defense doesn't apply. The court accepted that argument. The very next thing that happened is the court said anything more from the defense attorney and he said I understand the court's ruling but self-defense does apply. And they had a back and forth about it. There's nothing more that needs to be said later at the end of sentencing to re-raise that now re-raised objection. It was raised before the court ruled. It was raised after the court ruled. And BOSTEC doesn't require just reciting the same things over and over again. There's no dispute now that self-defense is a defense under Ohio law to the felony of firing over a public road. We cited the State v. Patton, State v. Henley cases out of Ohio. The government hasn't disputed that in their briefs. And the only dispute it seems that's remaining is the government says no the court didn't actually rely on that as the ground for its ruling. It actually resolved the issue on the merits. So that's the dispute is what does the record really show? Now the government at page 597, page ID 597 made the argument firing over a highway is a strict liability offense. So there's no intent to be proved on that. And the very next page the court made its ruling. It said I'm struck by the idea that if any person discharges a firearm over a public road or highway it's a felony of the third degree. Mr. Craig admitted in his testimony that he did that. So I think the four point enhancement is appropriate. That's a ruling. That's at page ID 598-99. Then there is a back and forth colloquy. And that's what the government points to saying well he also resolved it on the merits. But criminal rule 32 requires the court to resolve any factual disputes explicitly. Now this court in United States v. Roberts said we demand literal compliance with that rule. And that's not what the court did. Instead it said things like well it wasn't resolved one way or the other who started the shooting. That's at page ID 600. Well that's something the court needs to resolve if it's going to do that. Parts of his testimony weren't credible like handing over the holster. But the court here would have to walk a line, right, and say I find him credible when he said he was shooting over a public road but not credible about the holster handing over which is only relevant to justification not self-defense. But also not credible when he says the other side shot first. The court didn't make those findings. And I'm not faulting the court for the legal issue on the self-defense issue. So for that reason if the court does reach the sentencing issue we'd ask the court to find the court erred in resolving it on the legal grounds and remand for resentencing. Thank you. May it please the court. My name is Michael A. Sullivan. I'm an assistant U.S. attorney and I represent the United States of America, the Appellee in this case. I'd like to start first by maybe just clarifying the record on one of your questions, Judge Clay, when you asked regarding the judge's response in trial when the jury asked for the video. And I think you asked if didn't he say it wasn't in evidence. And I believe the answer was no. He just said you have to recall into your recollection. The actual quote found on page ID 500 of line 17 is the rap video is not admitted into evidence. So you have to just call into your recollection of that. The judge specifically said it was not in evidence. And indeed during the jury during the court's charge to the jury on three separate occasions he specifically addressed what is evidence, what's not evidence, what can be considered. At page 441 he defines evidence and finishes by saying the evidence in this case includes only what the witness said while they were testifying here under oath, the exhibits that I allowed into evidence, and the stipulations that the lawyers and parties agreed to. Nothing else is evidence. At line 447 the judge page 447 line 18 the court said that the jury's decision had to be based only on evidence. At page 449 line 24 the court said you'll have all the exhibits that have been properly offered and properly received into evidence. It was clear that the court made it clear that the jury had to limit their deliberation to the evidence. In this case the Facebook video was not offered or admitted into evidence. But nonetheless it's the United States position that it was properly authenticated in any event. How was it authenticated? Well it was authenticated so 901A says that evidence is sufficient to support a finding that the item is what it claims to be. And 901B4 says that the appearance, the contents, substance, internal patterns, or other distinctive characteristics of the item taken together with all the circumstances can be used to authenticate an item. In this case we have two officers who knew the defendant, were familiar with the defendant, testified that they saw a video depicting the defendant wearing the same or a similar coat that he was wearing when he was arrested, wrapping and waving a gun with an extended magazine. And one officer actually specifically detailed some of the statements the defendant made saying that he wasn't turning himself in until he catched some bodies. The video had an African American male wearing the same or similar jacket as the defendant was wearing when he was arrested. He was on the video saying, waving a gun with an extended magazine, and saying he was on the run, which was corroborated by the fact that Craig actually had a warrant out for him at the time. And he's also saying that very same line about he's not going to turn himself in until he catched some bodies. Additionally, while the person was masked in the video, if you look very closely at the video, you can actually see by the right eye of the individual in the video a marking. It's hard to see. The video is not very good quality. But in the picture of Craig, which was the one submitted by defense in this case, you'll see a cross tattoo right by his right eye. And in the picture of Craig, you'll see a cross tattoo right next to the right eye. Additionally, the jury heard the defendant testify, and they heard him on the video. So they had an opportunity to judge the voice as well. And his statement was telling. When the police officer asked him about the rap video, he didn't say what video you're talking about. He said, yeah, those things are just for show. They jam, meaning the extended magazines. And in fact, in this case, the extended magazine did jam because the gun was found. Your argument seems to be after the fact, you can authenticate it. What are you arguing? Are we to be authenticating it on appeal? Or did the district court do it implicitly but didn't tell anyone? No, I think that argument is going more toward the harmless error analysis in that it actually, all the evidence was there to properly authenticate it. I don't think it was used. It wasn't offered in evidence. It wasn't asked to be admitted. But when we're doing the analysis for harmless error, I think it's important to show that all the evidence was in the record to properly authenticate the video. So clearly, there would be no error. So how do you deal with the closing though, the closing argument where that is brought up? So I believe that the statement made in closing argument, unfortunately by me, was ill-advised. And again, I think that was not a proper statement during closing argument given the fact that the evidence was not admitted into evidence. Now I counter that with, again, I believe it could be a harmless error analysis because I believe the evidence was properly in, there was enough evidence to authenticate the video. And I believe that when you get to the harmless error analysis, I believe that it's overwhelming. What about the fact that this video is the only thing the jury asked about? Doesn't that suggest that it played an important role in their deliberations? I don't think so. I've been a prosecutor for 31 years and one thing I've learned is that you can never predict what a jury is thinking by the questions they ask. I remember early in my career, a jury asked specifically to see a series of photographs displayed in the court. Judge Clay, you mentioned the Elmo. This was back in the years when that was all we had on an Elmo because they wanted to see the pictures large and enlarged. And they gave us a list of photos and every juror went up and looked at every single photo. And after the case was over, we were talking to them and said, what was, they explained why one photo they wanted to see. And we said, what about the other one? And their response was, we just didn't want you to know what we were looking for. So I don't think we can, we can't try to determine what a jury is thinking by what they ask. I've learned that over and over through my career. So I don't believe that that's really very telling. I believe that the evidence is so overwhelming that in this case, first of all, the defendant possessed the weapon. He was seen by a police officer throwing something into the car. After shots were fired, the car is fleeing. He's seen getting out of the car, throwing a dark object into the car where a gun is recovered. When he's caught, he's wearing a double shoulder holster under his jacket. His gunshot residue proves positive in his hand. He, DNA is on the trigger and on the magazine of the gun. So clearly he possessed it. Now, he gives a statement during his testimony that he was, it was, he had to possess it. It was justification. And it would be our position that his statement was per se incredible. And I, just to get into, just so that I'm clear, is the government conceding that there was an error? Or are you, you're focusing just on harmless error here? I mean, would you agree that this was an erroneous way to present impeachment evidence? No, I would agree that the statement in closing was, was in error. I believe the statement in closing was, was, was error. What about the, the way the video came, was presented to the jury during the question of his weapon? I think as, as both you and Judge Clay indicated, it was cross-examination. And it was, it was kind of almost like a hybrid of 608 and 613. It was, it was a prior, it was a, it, it, an inconsistent statement. He says, I've never seen in person an extended magazine. And the, we had a video that appeared to show him holding an extended magazine. So it's a, yes, it's a prior act, like in 608, but it's not really to show a proponency, a proponency to be not credible. It's to show that he's specifically making a misstatement on the stand. So it's, it's inconsistent with what you're saying. Because we have, you're saying you never saw this magazine. We have evidence of you holding one. So I, I think it was proper cross-examination. I think we had good faith, the government had good faith to, to ask those questions because of the, the, the way the evidence. Is that the standard good faith in order to, to ask the question and show the video? Well, I think for, to, cross-examination, I think it is. And, and if. And what, what does that mean? What is, what would you say good faith is? Well, I, I don't know the specific definition. I think, believe that we had, we had a, a, a belief grounded in, in, in logic and, and reason that it was what we were claiming it was and that it was relevant to the questionings. I mean, I don't think it was, it wasn't any kind of prejudicial use. We had a belief that that video was what it, what it appeared to be. And, and I thought that it, it was proper to, to confront the defendant with it. So I, I, we're not conceding that that was error in, in itself. Because again, when the defendant denied it, we abandoned it. And frankly, when you talk about whether or not there was any error, the defendant actually did not, was not harmed by it. If anything, he might have been there to benefit. Up to that time, before he testified, there was testimony of two police officers about this video, about the video, about him waving a gun, saying I'm, I'm gonna catch some bodies. That was in, that was not, it was not challenged on appeal. That was, that was in evidence. So by showing the video, we actually gave the, the defendant the opportunity to deny it and say, that's not me. Up until there, it was uncovered. There was no objection when the evidence was brought out and the officers testified? There was objection and it was, it was overruled. But, but it was not challenged on, on, on, before this court. So there was, there was an objection the first time it was brought out. But the point is that by actually seeing the video, he had the opportunity to say that's not me. In which case, the, the whole inquiry was abandoned and the video was no longer discussed until, again, that unfortunate time in the closing. But again, getting to the, the harmless error analysis and that just how, basically how strong the case is. The defendant's story is, is just per se incredible. He's saying that they're being chased by people shooting at them. And that the person in the front seat is wearing a jacket and a shoulder holster. And while he's driving in a high speed and fleeing from someone shooting at him, he is taking off his jacket and his shoulder holster. And then hands it back to the defendant who then doesn't take the gun out but puts the shoulder holster on. Then takes the gun out and returns fire. And then after, afterwards, when the police chase them, he gets out, flees and then throws the gun on the seat. It is patently absurd. And again, I'm not, you know, I've never been in a shootout so I wouldn't use that as an analogy. But I did try to think of an analogy to show how ridiculous. If I were driving a car and the backseat passenger said I'm having anaphylactic shock and I had an EpiPen in my pocket, his story is analogous to me starting to drive fast to the hospital. I'm speeding to the hospital. While I'm speeding to the hospital, I'm taking my jacket off. I hand my jacket back to him. He's in anaphylactic shock. He puts the jacket on and then takes the pen out. Wouldn't it be more logical that I would just say here, right? But no. So it is per se incredible, his story. So that's the government's position. That's why, in this case, it's certainly a harmless error would save the day here. As far as sentencing, the district court did properly consider the defendant's argument. There's two colloquies in the record that specifically address the The court is talking about the defendant's testimony in his claim of self-defense and the court says, yeah, the testimony in trial is a little bit different. It was not resolved one way or the other who commenced the shooting. Whether it was in Craig's car or Craig himself or the other car, exactly how it occurred. But based on everything I had before me, I wasn't just saying it's strict liability. The court said, based on everything I had before me, I think it's pretty clear that applies. So I understand your objection, though. I don't know how more clear it could be. He specifically said, I understand your objection. I'm overruling. I think it applies. He then says, Mr. Craig's story clearly wasn't believed by the jury and just the idea of handing the holster over and things like that were pretty incredible statements. If there was any doubt, later in the transcript at page 616, the court in a colloquy with Mr. Craig says to Mr. Craig, I have to tell you, I don't believe your testimony about how the shoulder holster and everything was transferred to you and what happened with that. I mean, common sense says that story didn't make sense. And then there's the other thing. I could add some more points to your offense for not testifying truthfully. So the court actually indicated to the defendant that he had made the determination that the defendant had perjured himself during his testimony. So it is clear, and again, when assessing the enhancement, the court has only established it by a preponderance of the evidence. So by a preponderance of the evidence standard, I think the court made clear that it did not believe Mr. Craig's self-defense claim and that it was a ruling against him. So for all those reasons, the United States believes that the commission should be affirmed and that the sentence should be affirmed. Thank you. Thank you. Mr. Rimbaud? Yes, Your Honor. Three points, if I get there. First, the government's argument now that this was only admitted on cross and it wasn't even admitted on cross. It was then withdrawn. It doesn't jive with the record. The court's ruling was, well, you can use it with no limitation. When it was played, the court gave no limitation on how the jury could consider it. When the jury asked to see it again, the court didn't say, you can't use it or you can only use it for this purpose. It said, what you have to do is just call into your recollection of that. The government's already said that... That's what he said when they asked to see it again, not at the time of the... Well, I guess they were deliberating. Right. No limitation and no, you can't use this. You just have to rely on your recollection. And the police testimony, it couldn't come in unless the video also came in. That would violate the best evidence rule. There's no way that a court could allow the police officers to testify about a video and then the government... Are you doing that, though? I didn't because the video came in. It was admitted. So it's not a violation of the best evidence. Officers are allowed to testify about a video that comes into evidence. But if the court had actually withdrawn the video and said, yes, I'm sorry, this is actually... I made the wrong ruling that the government now concedes, I guess, it was, then yes, then I would appeal the best evidence rule. That testimony should have been stricken. But the testimony comes in if the video comes in and the video did come in. On the harmless error point, there's kind of two arguments it sounds like. The one is, well, it would have come in if we'd properly authenticated it this way. But now the government says, well, it was the same or a similar jacket. Four times they said, same jacket, same jacket, same jacket. That was the basis for it coming in. The idea that the lyrics are the same, again, the lyrics can be similar or the same. It doesn't identify Craig and it doesn't identify anybody in particular. And that they had a conversation about it does suggest that Craig knows something about this video, but it doesn't have to be him. It can be his friend. It can be his cousin. I'm hearing for the first time now the argument that there's something you can see on his eye. That wasn't in front of the court. It wasn't in the briefing. I don't have a response to that except that it wasn't relied on. The idea that his testimony was patently uncredible, partly that's taking liberties with what his testimony is. He didn't say that the driver took off his jacket. He said he handed me a shoulder holster. He handed him a shoulder holster in the middle of a firefight. He threw it on himself and started firing. The jury is the one who gets to decide whether to believe that or not. And the key point there, again, is the jury, I mean, counsel's argument that the jury didn't consider this or maybe didn't because we can't divine what they were thinking. Well, if we can't divine what they're thinking, we need to send this back because it's the jury's job to decide the credibility of his testimony. But the evidence that we did have indicates that they did consider it and it's then not harmless error. Thank you.